UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROY JOSEPH

                          Petitioner,

v.

JAMES CONWAY,

                          Respondent.

**MEMORANDUM AND ORDER**
07-CV-5223 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

On December 11, 2007, Petitioner Roy Joseph filed a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus seeking relief from a January 8, 2002, conviction in the Supreme Court of New York State, Kings County (the "Trial Court").

## BACKGROUND

After trial, Petitioner was convicted of murder in the second degree ("Count One"), attempted murder in the second degree ("Count Two"), and criminal possession of a weapon in the second degree ("Count Three"). (Pet. Writ Habeas Corpus ("Pet.") 1–2, ECF No. 1.); *see Joseph v. Conway*, 567 Fed. App'x 56, 57 (2d Cir. 2014) (summary order). On January 8, 2002, Petitioner was sentenced to: twenty years to life on Count One; twenty years to life on Count Two, to run consecutively to the term imposed for Count One; and ten years to life on Count Three, to run concurrently with the terms imposed for Counts One and Two. (Pet. 2.); *Conway*, 567 Fed. App'x at 57. Petitioner appealed his conviction, which was ultimately affirmed by the New York Supreme Court Appellate Division, Second Department (the "Appellate Division"), on July 5, 2005. (Pet. 2–3.) Petitioner subsequently sought leave to appeal from the Appellate Division's decision, which was denied on August 30, 2005. (*Id*. at 3.) Petitioner did not file a petition for certiorari in the United States Supreme Court. (*Id*. at 4.) Petitioner's conviction

1

therefore became final on November 28, 2005, 90 days after the Appellate Division denied his appeal.[1]  (Mem. Order Den. Pet. Habeas Relief ("Order Den. Pet.") 5, ECF No. 9.)

According to Petitioner, he attempted to collaterally attack his conviction in an application to the Appellate Division for a writ of error *coram nobis*.  (*Id.* at 3.)  Specifically, Petitioner claims that his application was filed "during the week of August 24th and 28th of 2006."  (*Id.*)  On June 4, 2007, Petitioner sent a letter to the Appellate Division to inquire about the status of his *coram nobis* application.  (*Id.*)  By letter dated June 19, 2007, the Appellate Division Clerk of Court informed Petitioner that the court had not received his *coram nobis* application.  (*Id.*)  On August 21, 2007, Petitioner filed a second *coram nobis* application in the Appellate Division, which was denied on November 27, 2007.  (See *id.*; *see also* Pet. at 4.)  The second application was virtually identical to the first.  (Mem. L. Supp. Pet. ("Pet.'s Mem.") 6, ECF No. 18.)

On December 11, 2007, Petitioner filed the instant petition.  By order dated February 20, 2013, Judge Rosalyn Mauskopf dismissed the Petitioner's petition as time-barred.  (See ECF Nos. 9–10.)

The Second Circuit granted a certificate of appealability, limited to the sole issue of whether Petitioner's attempt to file a *coram nobis* petition in 2006 tolled the limitations period and rendered his *habeas corpus* petition timely.  *See Joseph v. Conway*, 567 Fed. App'x 56, 57 (2d Cir. 2014) (summary order) (explaining procedural history).  By summary order issued May 27, 2014, the Second Circuit vacated the district court's decision, and "remand[ed] [the] [matter] to the district court for additional fact-finding and to decide, on the basis of a more complete factual record, whether Joseph is eligible for statutory or equitable tolling."  *Id.* at 60.  The

---

[1] Based on this, the parties agree that unless the Court concludes that statutory or equitable tolling applies, the instant petition, which was filed on December 5, 2007, is time-barred.  (Reply Mem. L. Supp. Pet.1–2, ECF No. 22.)

Second Circuit further instructed that, if the facts provided demonstrate that Joseph properly filed his petition, then the district court shall decide whether the statute of limitations was tolled. *Id.* On December 9, 2014, Judge Mauskopf issued an order directing briefing accordingly. This matter was subsequently reassigned to this Court.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), a person in custody pursuant to a state court conviction has one year from the date the conviction becomes final to file a petition for a writ of *habeas corpus*. 28 U.S.C. § 2244(d)(1)(A). Typically, failure to timely file the petition would result in dismissal. However, the law provides for tolling of the statute of limitations under certain circumstances. *First*, statutory tolling provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2). *Second*, equitable tolling permits the statute of limitations to be tolled where a petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Joseph*, 567 Fed. App'x at 58 (citing *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010) (internal quotation marks omitted)).

## DISCUSSION

Under law, a prisoner's petition for a writ of habeas corpus is deemed filed on the date it is provided to a prison official, otherwise known as the "prison-mailbox rule." *See Houston v. Lack*, 487 U.S. 266 (1988). In establishing the prison mailbox rule, the Supreme Court reasoned that such a rule was necessary because "*pro se* prisoners have no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Id.* at 273–74. Of particular relevance here,

3

the Second Circuit has held that the prison mailbox rule applies to *coram nobis* petitions. *Fernandez v. Artuz*, 402 F.3d 111, 112, 116 (2d Cir. 2005) (finding that the prison mailbox rule applied to a petitioner's *coram nobis* petition).

Petitioner contends that he timely filed his *coram nobis* application on August 24, 2006. (Pet.'s Mem. 25.) In support of his contention, Petitioner proffered declarations sworn to by himself; Ishmael Saladeen, the law clerk who prepared Petitioner's *coram nobis* application in 2006; and Edward Brown, the law clerk who assisted him in submitting his subsequent *coram nobis* application and copies of his original 2006 *coram nobis* petition in 2007. (Pet.'s Mem. Exs. A; B; C; E.) Petitioner declared that, on August 24, 2006, at Saladeen's direction, he signed the application before Saladeen's supervisor who notarized it. (Pet.'s Mem. Ex. E, Declaration of Roy Joseph ("Pet.'s Decl.") ¶ 5, ECF No. 18-5.) Subsequently, according to Petitioner, Saladeen gave Petitioner a copy of the application, and informed Petitioner that Saladeen had given the other envelopes containing the application to the correctional officer staffed at the prison's law library for mailing. (*Id*. ¶ 8.) Petitioner further declared that, after he was informed in 2007 that the Appellate Division had not received his application, he applied for a new law clerk to assist him with a replacement motion. (*Id*.) Brown was assigned to Petitioner's case, located a copy of Petitioner's original application, and assisted him in preparing the document for submission. (*Id*. ¶¶ 8–10.)

Saladeen's declaration is consistent with the facts asserted by Petitioner. (Pet.'s Mem. Ex. B, Declaration of Ismael Saladeen ("Saladeen Decl.") ¶¶ 5–6, ECF No. 18-2.) In addition to those facts, Saladeen declared that after he provided the envelopes to the officer on duty at the library, he personally observed that the officer "placed them . . . in a legal mail bag and took the bag to mail room after the [l]aw [l]ibrary closed." (*Id*. ¶ 7.) Notably, Saladeen also declared that

4

"[t]his was a standard procedure at that time for mailing legal documents that were completed in the [l]aw [l]ibrary with the assistance of Law Clerks." (*Id.*)

Brown's declaration lends further support to Petitioner's recitation of the events. According to Brown, in August 2007, Petitioner came to the law library looking for Saladeen, and "told [Brown] that he needed assistance because he had just learned that the state court has [sic] not received the *coram nobis* motion he filed in 2006 and he needed to file a replacement for that motion." (Pet.'s Mem., Ex. C, Declaration of Edward Brown ("Brown Decl.") ¶¶ 3–4, ECF No. 18-3.) Brown further declared that he located Petitioner's original *coram nobis* application and accompanying memorandum of law on Saladeen's computer, updated the dates on the original application and supporting documents, and prepared the files for mailing. (*Id.* ¶¶ 4–5.)

Collectively, these declarations provide a sufficient basis for the Court to conclude that Petitioner indeed filed his petition on August 24, 2006, under the prison mailbox rule. Accordingly, statutory tolling is warranted. Nonetheless, Respondent contends that the Court should not apply statutory tolling in this case because Petitioner failed to demonstrate that he made appropriate efforts to properly file his application. (Respt's Opp'n Pet.'s Mem. ("Respt's Opp'n") 3, ECF No. 20.) Specifically, Respondent maintains that there is no evidence that Petitioner provided his application to a prison official as required to trigger the prison mailbox rule. (*Id.* at 4–12.) In support of its opposition, Respondent proffered declarations from David Adamy and Gary Griffin, the two officers who were assigned to the prison's law library during the relevant time period. (Respt's Opp'n, Ex. A, Declaration of David Adamy ("Adamy Decl."); Ex. B, Declaration of Gary Griffin ("Griffin Decl.").) Both officers confirmed that Saladeen worked as a law clerk in the library. (Adamy Decl. ¶ 4; Griffin Decl. ¶ 4.) However, the officers

refuted Saladeen's contention that it was standard procedure for law clerks to give legal documents to officers for mailing. (Adamy Decl. ¶¶ 5–7; Griffin Decl. ¶¶ 6–8.) Instead, both officers indicated that inmates would typically mail their legal mail by placing it in the mailbox in their respective housing units, (*see* Adamy Decl. ¶ 6; Griffin Decl. ¶ 8), and that it was their practice to return legal documents to inmates after notarizing them. (*See* Adamy Decl. ¶ 7 ("It is my own practice to immediately return a legal document to an inmate after I have notarized it."); Griffin Decl. ¶ 8 ("It was my own practice to return to an inmate documents that I had notarized for him.").) Notably, neither officer proffered much by way of any specific recollection of the events at issue, but spoke only in generalities. Neither officer even recalled Petitioner. (Adamy Decl. ¶ 10; Griffin Decl. ¶ 10.) Indeed, the only specific recollection related to the issues at hand was made by Officer Griffin who declared that he had no personal recollection of ever notarizing any legal documents for Petitioner. (Griffin Decl. ¶ 10.) Tellingly, the record reveals that Officer Griffin did in fact notarize documents for Petitioner on at least one occasion, on August 25, 2006. (*Id.* ¶ 11.) In sum, Respondent's proffer is simply insufficient to dissuade the Court that Petitioner's recitation of the events is credible and requires tolling of the statute of limitations.

Even if the Court discounted Petitioner's contention that his application was given to a prison official, it nonetheless finds tolling applicable in this case. *Colon v. Ercole* is instructive here. In *Colon*, the petitioner provided his habeas petition to an inmate law clerk assigned to him at a prison, who in turn provided the petition to prison officials. *Colon v. Ercole*, No. 09-CV-746 (GBD) (RLE), 2009 WL 2633657, at *3, *4 (S.D.N.Y. Aug. 26, 2009). The respondent argued that the prison mailbox rule did not apply because an inmate law clerk was a third party outside of the prison system. *Id.* at *4. In rejecting this argument, the court found that unlike in cases

where legal filings were entrusted to family members or friends, it was reasonable for the petitioner to "entrust[] [his] [p]etition to the law clerk who had worked with [him] for the better part of a year, was in possession of his legal documents, and likely understood [the petitioner's] situation well." *Id.* The court held that "[t]he only risk of delay associated with [the petitioner's] chosen method was the one that he is not required to bear—delay attributable to the conduct of prison officials." *Id.* Thus, the court found that it was reasonable for the petitioner to entrust his petition to the law clerk, and that the prison mailbox rule applied to toll the statute of limitations. *Id.*

The same reasoning applies here. There is no dispute that Petitioner timely provided his application to Saladeen, a prison-appointed law clerk for mailing. Petitioner is therefore eligible for statutory tolling of his *coram nobis* application.[2]

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner's petition is eligible for statutory tolling.

SO ORDERED.

Dated: Brooklyn, New York　　　　　　　　　/s/ LDH
　　　　August 4, 2021　　　　　　　　　　　LaSHANN DeARCY HALL
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[2] On the facts of this case, equitable tolling would also be warranted. Petitioner's application, which the Court has found was properly filed in August 2006, was not received by the Appellate Division because of extraordinary circumstances beyond his control. Moreover, Petitioner appears to have been diligently pursuing his rights as required to qualify for equitable tolling. *See Joseph*, 567 Fed. App'x at 58 (citing *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010) (internal quotation marks omitted)) (providing that equitable tolling is proper where a petitioner demonstrates that "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.").