UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROY JOSEPH,                                          :

                    Petitioner,          :          **MEMORANDUM DECISION**

              - v -                 :          07-CV-5223 (DC)

JAMES CONWAY, Superintendent,                        :
Attica Correctional Facility

                            :

                  Respondent.

                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          GEORGIA J. HINDE, Esq.
                        228 Park Avenue South
                        Suite 33276
                        New York, NY 10003
                              Attorney for Petitioner

                        ERIC GONZALEZ, Esq.
                        District Attorney
                        Kings County
                        By:    Diane R. Eisner, Esq.
                              Assistant District Attorney
                        350 Jay Street
                        Brooklyn, NY 11201
                              Attorney for Respondent

CHIN, Circuit Judge:

        On January 8, 2002, following a jury trial, petitioner Roy Joseph ("Joseph")

was convicted in the Supreme Court of the State of New York, Kings County (Firetog,

*J.*), of depraved indifference murder, attempted murder, and criminal possession of a

weapon.  *See* Dkt. 39-17 at 32.  He was sentenced, as a second violent felony offender, to an indeterminate term of imprisonment of forty years to life on all three counts.  *Id.*  His convictions were affirmed by the Appellate Division, Second Department, *People v. Joseph*, 797 N.Y.S.2d 310 (2d Dep't 2005) ("*Joseph I*"), and the New York Court of Appeals denied leave to appeal, *People v. Joseph*, 836 N.E.2d 1159 (N.Y. 2005) (Rosenblatt, *J.*) ("*Joseph II*").

On December 11, 2007, Joseph, proceeding *pro se*, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* Dkt. 1.  The Kings County District Attorney's Office filed its opposition on February 29, 2008.  *See* Dkt. 6.  The timeliness of Joseph's Petition was the subject of litigation -- including in the Second Circuit -- for more than a decade, until August 4, 2021, when, by memorandum and order, this Court held that the Petition was eligible for statutory tolling.  *See* Dkt. 28. On April 15, 2022, after exhausting his state court remedies on an additional claim, Joseph, now represented by counsel, supplemented his Petition.  *See* Dkt. 34.  On January 17, 2023, the case was reassigned to the undersigned.  *See* Dkt. Sheet at 6.  The District Attorney's Office filed its opposition on March 1, 2023, and Joseph replied on March 15, 2023.  *See* Dkt. 40, 41.

For the reasons set forth below, Joseph's Petition is denied.

## BACKGROUND

### I.   The Facts

The evidence at trial established the following:

On March 12, 2000, Edwin Innis threw a birthday party in a dark, foggy, and crowded club in Brooklyn. *See* Dkt. 39-5 at 8.  After hours of dancing and drinking, around 4:00 A.M., an unknown man at the party -- identified in court as Joseph by Shawn Cave ("Shawn") -- approached David Clark ("David") about a verbal altercation David had earlier that night with another person. *Id.* at 34.  Shawn heard David tell Joseph to "leave [him] alone" and that the incident was "none of [his] fucking business." *Id.* at 19.  Shawn saw that Joseph "got upset," and "went to reach for something" under his shirt, at which point Shawn concluded that Joseph had a gun, and tried, unsuccessfully, to restrain him. *Id.* at 19-21.  Shawn did not see Joseph fire a gun, but he heard multiple shots fired on the dance floor and into the disc jockey ("DJ") booth. *Id.* at 21-22.

Daniel Foster ("Foster") was in the DJ booth when he heard shots coming from the dance floor. *See* Dkt. 39-9 at 8.  Foster could not see who was shooting, but he saw David get shot. *Id.* at 9.  David was shot five times and he suffered severe injuries to his lungs, intestines, spine, and ribs. *See* Dkt. 39-6 at 44-45.

Moments later, during a break in the shooting, Foster moved from the DJ booth onto the dance floor, from where he was still unable to view the shooter's face.

*See* Dkt. 39-9 at 11-12.  Foster then witnessed Carlos Cave ("Carlos") unsuccessfully attempt to apprehend the shooter, after which Carlos was fatally shot two or three times.  *Id.* at 13-15.  The autopsy conducted on Carlos showed that he died because of a gunshot wound to his head, shot from no less than "12 to 18 inches" away.  *Id.* at 73, 78.

After Carlos was shot, Foster, with the help of Shawn, Roosevelt Walker ("Walker"), Dion Clark ("Dion"), and others, disarmed Joseph.  *See* Dkt. 39-9 at 18.  Once Foster got control of the gun, he shot Joseph once.  *Id.* at 18-19.  Foster and the others then proceeded to beat Joseph with glass bottles and took turns striking him in the head with the gun.  *See* Dkt. 39-5 at 31-32; Dkt. 39-6 at 71-74, 97-98.  Foster testified that he "tried to kill him" and would have done so if he "had more time" before the police came.  Dkt. 39-9 at 19.  When the police arrived, Shawn and the others informed them that Joseph was "the guy who killed [Carlos] and shot [David]."  Dkt. 39-5 at 36.

## II.     *Procedural History*

### A.     **State Court Proceedings**

Joseph was charged with one count of first-degree murder, two counts of second-degree murder, one count of attempted second-degree murder, two counts of first-degree assault, and one count each of second- and third-degree criminal possession of a weapon.  *See* Dkt. 39-17 at 6-7.

At trial, numerous individuals who attended Innis's party testified to the shootings, but most witnesses could only provide a vague and general description of

the shooter as a dark-skinned, short, stocky man, *see, e.g.*, Dkt. 39-5 at 20; 39-6 at 9; 39-11 at 14, and they inconsistently described the shooter's clothing -- wearing either a "plaid" and "multi-colored" shirt, Dkt. 39-6 at 18; a "bluish/greenish sweatshirt," *id.* at 62; or a "[d]ark jacket," Dkt. 39-11 at 12.  Although Shawn identified Joseph as the shooter in court, he admitted that he never saw Joseph fire a gun.  *See* Dkt. 39-5 at 27.  Dion and Walker also testified that they never saw Joseph shoot anyone.  *See* Dkt. 39-6 at 83, 100.  Other witnesses, including Foster, admitted to never seeing the shooter's face.  *See, e.g.*, Dkt. 39-5 at 68-69; 39-6 at 18, 38, 129; 39-7 at 5; 39-9 at 11-12.

Defense counsel pointed out the above weaknesses of the prosecution's case to the jury.  *See* Dkt. 39-11 at 25-28.  Defense counsel also challenged Foster's credibility on grounds that he did not come forward until twenty months after the crimes, that he first met with the prosecution a week before he testified at trial, and that he was testifying pursuant to an immunity agreement such that he would not be prosecuted for shooting and assaulting Joseph if he testified at trial.  *Id.* at 30-33.[1]

In summation, the prosecution emphasized the importance of Foster's testimony to its case, stating that "[b]ut for Dave Foster, but for him, [Joseph] might have gotten away," *id.* at 46, and that Foster's testimony is "how" the prosecution

---

[1]      When trial began in November 2001, Foster was not scheduled as a witness because he was still unknown to the prosecution at that time.  Foster first came forward in the middle of trial to report his observations from that night and to admit that he shot Joseph.  Dkt. 39-17 at 7.

"knows [Joseph] is the right guy," *id.* at 41.  The prosecution also stated that Foster was not granted immunity "until after he told [the prosecution] the truth."  *Id.* at 39.

When instructing the jury, the trial court advised that summation arguments "are not evidence," and that neither attorney had any "power to tell [the jury] that one witness is telling the truth or another witness is not."  *Id.* at 54.  As relevant to this Petition, the trial court instructed the jury that intentional second-degree murder requires "intent to cause the death of another."  *Id.* at 64.  The trial court also instructed the jury on the lesser included offense of depraved indifference second-degree murder, which requires reckless conduct that "creates a grave risk of death to another person," *id.* at 70, and "under circumstances evincing a depraved indifference to human life," such as "firing [a] gun in close proximity to Carlos Cave's head," *id.* at 71.  Defense counsel objected to the court's instruction that an example of depraved indifference murder is "firing a gun in close proximity of Carlos Cave's head."  *Id.* at 78.

On December 3, 2001, during deliberations, the jury requested clarification of the difference between intentional murder and depraved indifference murder.  *See* Dkt. 39-22 at 53.  The trial court re-read the charges as to these two crimes, to which defense counsel did not object.  *Id.* at 51.  That same day, the jury found Joseph guilty of attempted second-degree murder of David, depraved indifference second-degree murder of Carlos, and criminal possession of a weapon.  *See* Dkt. 39-13 at 16.  Joseph was acquitted of first-degree murder and intentional second-degree murder.  *Id.*

On January 8, 2002, the trial court sentenced Joseph to consecutive terms of imprisonment of twenty years to life for the murder conviction and twenty years for the attempted murder conviction, as well as a concurrent term of ten years for the weapon possession conviction. *See* Dkt. 39-12 at 16.

On October 4, 2004, Joseph, represented by counsel, appealed his convictions to the Appellate Division, Second Department, on the sole ground that "he was denied due process by the prosecutor's improper and prejudicial summation arguments, including vouching, mischaracterizing the defense, shifting the burden of proof, and appealing to the sympathies of the jurors." Dkt. 39-22 at 55-56. Shortly thereafter, in another case, the New York Court of Appeals clarified depraved indifference murder, stating that "[w]hile we have identified instances in which a killing could qualify as depraved indifference murder, a point-blank shooting is ordinarily not one of them." *People v. Payne*, 819 N.E.2d 634, 635 (N.Y. 2004), *abrogated by People v. Feingold*, 852 N.E.2d 1163 (N.Y. 2006). Given the recent decision and with permission from the Appellate Division, Joseph filed a supplemental brief that challenged the sufficiency of the evidence as to the depraved indifference murder charge, arguing that the evidence that Carlos was shot in the head at close range was consistent only with intentional conduct -- charges of which the jury acquitted Joseph. *See* Dkt. 39-16 at 3.

By decision dated July 5, 2005, the Appellate Division affirmed Joseph's conviction. *See Joseph I*, 797 N.Y.S.2d at 310. As to the claim of improper prosecutorial

7

conduct in summation, the Appellate Division held that the issue was "largely

unpreserved for appellate review," *id.* (citing, *inter alia*, N.Y. Crim. Proc. Law § 470.05(2)

(contemporaneous objection rule)), and that, in any event, the conduct did not deprive

the defendant of a fair trial, even if "some of the challenged remarks may have been

improper," *id.*  The Appellate Division also noted that any prejudice to Joseph from the

prosecutor's summation "was mitigated by the charge to the jury." *Id.*  As to the

supplemental claim, the Appellate Division dismissed it as "unpreserved for appellate

review" and "decline[d] to review it in the exercise of our interest of justice jurisdiction."

*Id.*  Leave to appeal was thereafter denied on August 30, 2005.  *See Joseph II*, 836 N.E.2d

at 1159.

   In August 2006, Joseph, proceeding *pro se*, attempted to collaterally attack

his convictions in an application to the Appellate Division for a writ of error *coram nobis.*

*See* Dkt. 5 at 3.  The *coram nobis* application raised, *inter alia*, a claim for ineffective

assistance of appellate counsel for failing to challenge the sufficiency of the evidence to

convict for depraved indifference murder.  *See* Dkt. 39-20 at 13.  Nearly a year later, on

June 19, 2007, the Appellate Division informed Joseph that the court had not received

his *coram nobis* application, which Joseph then re-filed on August 21, 2007.  *See* Dkt. 5 at

3. The Appellate Division denied Joseph's application on November 27, 2007, holding

that he "failed to establish that he was denied the effective assistance of appellate

counsel." *People v. Joseph*, 845 N.Y.S.2d 754 (2d Dep't 2007) ("*Joseph III*").  Joseph did not seek leave to appeal to the New York Court of Appeals.  *See* Dkt. 6 at 40.

On June 14, 2021, Joseph, *pro se*, filed a second *coram nobis* motion, again arguing ineffective assistance of appellate counsel, but this time for failing to challenge on appeal the trial court's noncompliance with "the provisions mandated in CPL § 310.30 regarding a jury note" and its re-reading of the charge as to intentional and depraved indifference murder, rather than clarifying the difference between the two crimes as the jury had requested.  Dkt. 39-22 at 9.  The Appellate Division denied the application on October 13, 2021, again holding that Joseph "failed to establish that he was denied the effective assistance of appellate counsel."  *People v. Joseph*, 152 N.Y.S.3d 634 (2d Dep't 2021) ("*Joseph IV*"), *leave to appeal denied*, 180 N.E.3d 500 (N.Y. 2021) (Singas, J.).

## B.  Proceedings Below

Joseph, proceeding *pro se*, filed the instant Petition on December 11, 2007, renewing the claims raised on direct appeal and in his first *coram nobis* application -- (1) prosecutorial misconduct during summation; (2) insufficiency of the evidence as to the depraved indifference murder conviction; and (3) ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence.  *See* Dkt. 1 at 6, 8, 10.  By memorandum decision entered February 20, 2013, the Court dismissed the Petition as time-barred, concluding that Joseph was not entitled to statutory or equitable tolling of

the statute of limitations set forth in 28 U.S.C. § 2244(d)(1).  *See Joseph v. Conway*, No. 07-CV-05223 (RRM), 2013 WL 632118, at *6 (E.D.N.Y. Feb. 20, 2013*) ("Joseph V"); see also id.* at *6 n. 5 (summarily dismissing the Petition as meritless).

The Second Circuit thereafter granted a certificate of appealability, limited to the sole issue of whether Joseph's attempt to file a *coram nobis* application in 2006 tolled the limitations period and rendered his Petition timely.  *See Joseph v. Conway*, 567 F. App'x 56, 57 (2d Cir. 2014) (summary order).  By summary order issued May 27, 2014, the Second Circuit vacated the judgment of the Court dismissing the Petition, and remanded "for additional fact-finding and to decide, on the basis of a more complete factual record, whether Joseph is eligible for statutory or equitable tolling."  *Id*. at 60.[2]

On remand, by memorandum and order dated August 4, 2021, the Court held that declarations sworn to by Joseph and two law clerks who helped him prepare the *coram nobis* application "provide a sufficient basis for the Court to conclude that [Joseph] indeed filed his petition on August 24, 2006, under the prison mailbox rule." *Joseph v. Conway*, No. 07-CV-5223 (LDH), 2021 WL 3424730, at *3 (E.D.N.Y. Aug. 4, 2021).  Accordingly, the Court concluded that the Petition is eligible for statutory tolling and is not time-barred.  *Id.*

---

[2]      I was a member of the Second Circuit panel that vacated and remanded the Court's February 2013 memorandum decision.  Because the panel addressed only the timeliness of Joseph's Petition, and the panel ruled in favor of Joseph on the timeliness issue, "an objective, informed observer could [not] reasonably question [my] impartiality," *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000), and I now decide the merits of the claims raised in the Petition.

On April 15, 2022, Joseph, represented by counsel, filed a memorandum of law in support of the Petition's three claims, and making two additional arguments -- (1) there was insufficient evidence proving that Joseph was the shooter; and (2) the trial court improperly responded to the jury's request for clarification between intentional and depraved indifference murder. *See* Dkt. 34 at 37-39. On April 18, 2022, the Kings County District Attorney's Office moved to strike Joseph's memorandum of law, arguing the Court had already addressed the merits of the Petition as it was initially filed, *see Joseph V*, 2013 WL 632118, at *6 n. 5, and that the additional arguments were time-barred because they did not "relate back" to the claims in the Petition, Dkt. 30 at 4.

On January 17, 2023, the case was reassigned to the undersigned. *See* Dkt. Sheet at 6. On January 27, 2023, the Court denied the motion to strike, ordering that an opposition to the supplemented Petition be filed, without any prejudice to the argument that the additional claims are time-barred. *See* Dkt. 36. The District Attorney's Office filed its opposition on March 1, 2023, and Joseph replied thereafter. *See* Dkt. 40, 41.

## DISCUSSION

### I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

"To provide the state with the first opportunity to consider and correct alleged violations of its prisoners' constitutional rights, a state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (citing 28 U.S.C. § 2254(b)(1)(A)).  "[T]he prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

II.       *Analysis*

Joseph raises three claims in his *pro se* Petition:  (1) prosecutorial misconduct during summation; (2) insufficiency of the evidence as to the depraved indifference murder conviction; and (3) ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence.  *See* Dkt. 1 at 6, 8, 10.  Joseph also raises two additional claims in his counseled brief -- insufficient evidence proving that Joseph was the shooter, and the trial court's improper response to the jury's request for clarification.  *See* Dkt. 34 at 37-39.  I address each claim in turn.

A.       **Prosecutorial Misconduct During Summations**

Joseph argues that he was deprived of a fair trial when the prosecutor, in summation, "shift[ed] the burden of proof" and vouched for the credibility of Foster as a witness, Dkt. 1 at 6, by stating, *inter alia*, that Foster's testimony is "how" the prosecution "knows [Joseph] is the right guy," Dkt. 39-11 at 41, and that Foster was not granted immunity "until after he told [the prosecution] the truth," *id.* at 39.  Because the Appellate Division rejected this claim on the ground that it was "largely unpreserved for appellate review," *Joseph I*, 797 N.Y.S.2d at 310 (citing N.Y. Crim. Proc. Law § 470.05(2)), this determination constitutes an independent and adequate state ground that precludes habeas review of this claim in federal court.  *See Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).  Moreover, even if Joseph's claim was not procedurally barred, the Appellate Division addressed the merits, concluding that "while some of the

challenged remarks may have been improper, they did not deprive [Joseph] of a fair trial," and that "any prejudice . . . was mitigated by the charge to the jury."  *Joseph I*, 797 N.Y.S.2d at 310.  This determination is an adjudication on the merits, *see Johnson*, 568 U.S. at 301, is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be disturbed unless Joseph can show that this decision "involved an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1).  Joseph cannot meet this high burden.

       "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone . . . in an otherwise fair proceeding."  *United States v. Young*, 470 U.S. 1, 11 (1985).  "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted).  "In order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "Whether a prosecutor's improper remarks result in a denial of due process depends upon whether the remarks caused 'substantial prejudice' to the defendant."  *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989) (citation omitted).  To determine whether "substantial prejudice" exists, the court "must assess how prejudicial the prosecutor's conduct was, what

measures, if any, the trial court used to cure the prejudice, and whether conviction was

certain absent the prejudicial conduct." *Gonzalez*, 934 F.2d at 424.

Even if, as the Appellate Division observed, some of the prosecutor's

remarks "may have been improper," *Joseph I*, 797 N.Y.S.2d at 310, the prosecutor's

remarks regarding Foster's credibility were largely responsive to defense counsel's

earlier attacks on Foster to the jury, *see* Dkt. 39-11 at 30-33, which does not, on its own,

rise to a denial of due process. *See Cooper v. Costello*, 112 F.3d 503 (2d Cir. 1997) (holding

that where "the prosecutor was merely responding to the content of defense counsel's

summation, which had attacked the credibility of the same witness," the prosecutor's

summation did not so infect the trial with unfairness (citing *Gonzalez*, 934 F.2d at 424)).

Moreover, even assuming that the prosecutor "overstepped the bounds of

proper summation" by personally vouching for the truthfulness of Foster, *Gonzalez*, 934

F.2d at 424, such personal vouching did not "so infect[] the trial with unfairness,"

*Donnelly*, 416 U.S. at 643, or cause "substantial prejudice," *Tutino*, 883 F.2d at 1136.

Although a "prosecutor's personal voucher of [a witness'] truthfulness, of course, [is]

improper," "the prosecutor in the case at hand did not do anything so egregious as to

comment on the defendant's failure to take the stand or the defendant's invocation of

his fundamental rights." *Gonzalez*, 934 F.2d at 424.  The trial court did not sustain

defense counsel's objection on this point, *see* Dkt. 39-11 at 39, but it took some curative

action by properly instructing the jury that summation arguments "are not evidence,"

and that neither attorney had any "power to tell [the jury] that one witness is telling the truth or another witness is not." *Id.* at 54; *see also Gonzalez*, 934 F.2d at 424 (holding that the trial court took curative action in response to a prosecutor's personal vouching of a witness' credibility by instructing "the jury that the summations were not evidence and that the jury was the sole judge of the facts").[3]  Moreover, there was ample evidence to sustain Joseph's convictions, including Shawn's identification of Joseph as the shooter, and Foster's testimony about the shootings of David and Carlos and his admission to shooting Joseph after disarming him.  *See, e.g.*, Dkt. 39-5 at 34; 39-9 at 9-19.  Thus, even if the prosecutor had personally vouched for Foster's credibility, "[g]iven the court's corrective actions and the strength of the evidence against [Joseph], the prosecutor's summation did not render the trial fundamentally unfair." *Gonzalez*, 934 F.2d at 424.

Accordingly, it was reasonable for the Appellate Division to conclude that reversal on this ground was unwarranted, and habeas relief on this claim is denied.

**B.     Sufficiency of the Evidence to Convict for Second-Degree Depraved-Indifference Murder**

In the Petition's second ground for relief, Joseph argues that the evidence "was legally insufficient to sustain his conviction for depraved indifference murder because there was no reasonable view of the evidence that the gunman, who shot the

---

[3]     The trial court also properly instructed the jury on the prosecution's burden of proof, stating that before the jury could find Joseph "guilty of a particular crime the People must prove beyond a reasonable doubt every element of that crime, including that [Joseph] is the person who committed the crime." Dkt. 39-11 at 56.

decedent in the head at close range, committed a [r]eckless, rather than intentional, murder." Dkt. 1 at 8.  The Appellate Division dismissed this claim as "unpreserved for appellate review" and "decline[d] to review it."  *Joseph I*, 797 N.Y.S.2d at 310.  Although dismissal by the Appellate Division on this ground would generally prevent federal habeas review of this claim, *see Downs*, 657 F.3d at 104, Joseph nonetheless urges the Court to overturn his conviction for depraved indifference murder, arguing that before his conviction was final in 2005, "New York law itself evolved to recognize clearer and more definite distinctions between intentional and depraved indifference murder," Dkt. 34 at 31, and the record lacks evidence that "any conduct by the gunman at the party was undertaken with what the law might recognize as depraved indifference," *id.* at 34. I first address whether this claim is indeed procedurally barred from habeas review and then turn to the merits.

### i.   Procedural Default

New York's contemporaneous objection rule requires a party to object to what he or she believes is a legal error in a trial court's ruling or instruction "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."  N.Y. Crim. Proc. Law § 470.05(2).  "If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with such a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the

constitutional claim on habeas corpus review." *Peterson v. Scully*, 896 F.2d 661, 663 (2d

Cir. 1990) (citing *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977)); *see also Harris v. Reed*, 489

U.S. 255, 260 (1989) (explaining that federal habeas review is barred if the constitutional

claim was denied by a state court on a state procedural "ground that is both

'independent' of the merits of the federal claim and an 'adequate' basis for the court's

decision").  "Where a [petitioner] has procedurally defaulted a claim by failing to raise it

on direct review, the claim may be raised in habeas only if the [petitioner] can first

demonstrate either cause and actual prejudice, or that he is actually innocent."

*DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006) (quoting *Bousley v. United States*, 523

U.S. 614, 622 (1998) (internal quotation marks omitted)); *see also Coleman v. Thompson*,

501 U.S. 722, 750 (1991).

   In *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012), the Second Circuit

held that a petitioner similarly situated to Joseph -- convicted of depraved indifference

murder after standing trial in New York state court in 2001 -- demonstrated both cause

and prejudice to overcome the procedural default of failing to preserve a claim that the

evidence of his guilt of depraved indifference murder was legally insufficient.  As to

cause, the Second Circuit was "persuaded that a legal sufficiency objection . . . would

have been futile" at the time of trial because "New York law on depraved indifference

murder changed drastically" between petitioner's trial in 2001 and his conviction

becoming final, and this "shift in New York law . . . constituted an 'objective factor

external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (citation omitted).  As to prejudice, the court concluded that "the submission of a depraved indifference murder charge to the jury, if that charge was in error, worked to Petitioner's 'actual and substantial disadvantage.'" *Id.* (citation omitted).

Importantly, the judgment convicting the petitioner in *Gutierrez* of depraved indifference murder was rendered on December 3, 2001, *People v. Gutierrez*, 790 N.Y.S.2d 493, 493 (2d Dep't 2005), about a month before Joseph's conviction.  Thus, applying *Gutierrez* to the circumstances presented here, the shift in New York law as to depraved indifference murder establishes cause and prejudice that allow Joseph to overcome the procedural bar that would otherwise prevent federal habeas review of this claim.

### ii.    Merits

Joseph's challenge to the sufficiency of the evidence, although not procedurally barred from review by this Court, fails on the merits.  Although a federal court engaging in habeas review typically accords "substantial deference," *Fischer*, 780 F.3d at 560, to a state court's adjudication of a petitioner's claim on the merits, *see* 28 U.S.C. § 2254(d), in this case, "deference is not required, and conclusions of law . . . are reviewed *de novo*," *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009), because the Appellate Division never adjudicated this claim for insufficient evidence on the merits.

19

When considering a sufficiency argument on habeas review, the relevant question under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." A federal court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor," and, in doing this, "must look to state law to determine the elements of the crime." *Fama v. Comm'r Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted). A "petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Id.*

A person is guilty of depraved indifference murder under New York law when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). Joseph argues that given (1) various New York Court of Appeals cases published when his direct appeal was pending -- namely *People v. Hafeez*, 792 N.E.2d 1060 (N.Y. 2003), *People v. Gonzalez*, 807 N.E.2d 273 (N.Y. 2004), and *Payne*, 819 N.E.2d at 634, which Joseph reads as holding that a point-blank shooting is not depraved indifference murder -- and (2) "the lack of evidence in the record to show that any conduct by the gunman at the party was undertaken with what the law might recognize as depraved indifference as opposed to recklessness or intent," his conviction must be overturned. Dkt. 34 at 32, 34.

The Second Circuit, however, rejected a similar argument in *Gutierrez*, explicitly stating that "the three depraved indifference cases decided before [petitioner's] conviction became final (*Hafeez*, *Gonzalez*, and *Payne*) do not compel the conclusion that a one-on-one stabbing or shooting is always intentional" and distinguishing "the killings in th[o]se three cases [as being] unquestionably intentional." *Gutierrez*, 702 F.3d at 113. One key distinguishing fact between the killings in *Hafeez*, *Gonzalez*, and *Payne*, and the killing in *Gutierrez* was that the petitioner in *Gutierrez* had "no prior relationship or personal disagreement" with the two victims he stabbed and killed. *Id.* at 114. The Second Circuit concluded that the jury could have reasonably concluded that petitioner "wielded his knife haphazardly, without intending to kill anyone, but nevertheless indifferent as to whether he inflicted fatal injuries," such that the killings would fall within the "Polish roulette" category of the "recurring fact patterns . . . identified" as constituting depraved indifference murder. *Id.* (citing *People v. Suarez*, 844 N.E.2d 721 (N.Y. 2005)).

So too here, a reasonable jury could have found that "although he used a weapon, [Joseph] recklessly risked [Carlos's] death without intending to kill." *Id.* Like the petitioner in *Gutierrez*, and unlike the defendants in *Hafeez*, *Gonzalez*, and *Payne*, Joseph had "no prior relationship or personal disagreement" with Carlos. *Id.* In fact, the jury heard testimony from Shawn that Joseph had a quarrel with *David* and grew upset when David dismissed and cursed at him. *See* Dkt. 39-5 at 19-21. The jury also heard

testimony from Foster that he witnessed David being shot five times, after which Carlos came from behind the shooter "to try to stop him from shooting, to grab him"; that Carlos "tripped and fell to his knees" "when he got his hand on the shooter"; and that the shooter then turned and "fired down to Carlos . . . two or three times." Dkt. 39-9 at 13-15. And, as the medical examiner revealed to the jury, Carlos suffered two gunshot wounds that followed completely different trajectories -- one that was fatal, shot downward from 12 to 18 inches away from Carlos's head, went through the left side of his brain and out his chin, and the other that was shot upward, entered the right side of his body and exited his back. *See id.* at 72-74. Not only does the medical examiner's testimony corroborate Foster's testimony that Carlos was shot from above, after he had tripped and fallen to his knees, but the fact the bullets had different trajectories reasonably supports the conclusion that Joseph was aiming generally behind himself when he shot Carlos and was not intentionally aiming at a vital part of Carlos's body. *See People v. Hull*, 54 N.E.3d 1155, 1157 (N.Y. 2016) ("The fact that a bullet entered the victim's forehead does not necessarily mean defendant intended to kill him, as 'it is a matter of common experience that people who fire handguns do not always hit precisely the intended target.'" (citation omitted)). On this record, viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have concluded that Joseph shot Carlos not with an intent to kill, but to get Carlos off of him so that he could continue to shoot at David; that Joseph fired those two shots at Carlos in a dark,

crowded nightclub where he might not have seen exactly where his shots were going; and that he did so recklessly, with a depraved indifference to human life.

Accordingly, because there was sufficient evidence from which a reasonable jury could conclude that Joseph acted with depraved indifference when shooting Carlos, this claim is also without merit, and habeas relief must be denied.

### C. Ineffective Assistance of Appellate Counsel for Failing to Challenge the Sufficiency of the Evidence

Nor is Joseph entitled to habeas relief on his claim that he was denied effective assistance of appellate counsel because his counsel failed to argue on direct appeal that the evidence was legally insufficient to support a conviction for depraved indifference murder.  Dkt. 1 at 10.  Not only is this claim unexhausted under 28 U.S.C. § 2254(b)(1)(A), but the Appellate Division concluded that Joseph "failed to establish that he was denied the effective assistance of appellate counsel," *Joseph III*, 845 N.Y.S.2d at 754, which is a determination on the merits that must be afforded "substantial deference," *Fischer*, 780 F.3d at 560.

This claim for ineffective assistance of appellate counsel must be dismissed because Joseph has not "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Joseph raised this claim in his first *coram nobis* application to the Appellate Division, *see* Dkt. 39-20 at 13, but after it was denied on the merits, *see Joseph III*, 845 N.Y.S.2d at 754, Joseph did not seek leave to appeal to the New York Court of Appeals, *see* Dkt. 6 at 40.  Accordingly, this claim is unexhausted and

cannot be considered on federal habeas review.  *See Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010) ("We may not consider a state prisoner's application for a writ of habeas corpus unless the applicant has exhausted available state remedies by 'fairly present[ing] his claim in each appropriate state court (including a state supreme court with powers of discretionary review).'" (quoting *Baldwin*, 541 U.S. at 29)).

Even if this claim were properly exhausted, Joseph cannot show that the Appellate Division unreasonably applied federal law, *see* 28 U.S.C. § 2254(d)(1), when it concluded that Joseph had "failed to establish that he was denied the effective assistance of appellate counsel," *Joseph III*, 845 N.Y.S.2d at 754.  To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must demonstrate that (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  To satisfy the first prong -- the performance prong -- the record must demonstrate that "'in light of all the circumstances,' the acts or omissions of [defense] counsel 'were outside the wide range of professionally competent assistance.'"  *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020) (quoting *Strickland*, 466 U.S. at 690).  "Under the second prong -- the prejudice prong -- a 'reasonable probability' of a different result is a 'probability sufficient to

undermine confidence in the outcome.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 694).

Here, the state court record shows that Joseph's counsel did in fact argue on direct appeal that the evidence was legally insufficient to sustain his conviction for depraved indifference murder. *See* Dkt. 39-16 at 3. Although Joseph's initial appellate brief argued only that he was denied due process by the prosecutor's misconduct in summation, *see* Dkt. 39-13 at 2, Joseph's appellate counsel later filed, with permission from the Appellate Division, a supplemental brief challenging the sufficiency of the evidence, *see* Dkt. 39-16 at 3. Thus, where Joseph's appellate counsel did in fact perform the very action that he claims was omitted in violation of his Sixth Amendment right, it was reasonable for the Appellate Division to conclude that Joseph failed to establish that his counsel's representation was deficient or that it prejudiced his defense.[4]

Accordingly, because this claim is procedurally barred, and in any event, without merit, habeas relief must be denied.

---

[4]     Nor would Joseph's claim of ineffective assistance of counsel prevail under New York law, which requires the defendant to show that "counsel failed to provide meaningful representation," *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citations omitted), but unlike the federal standard, *see Strickland*, 466 U.S. at 694, does not require a showing of prejudice, *id.* at 122-23 (citations omitted). Because the state court record shows that Joseph's appellate counsel did in fact raise a sufficiency of the evidence claim, *see* Dkt. 39-16 at 3, Joseph cannot show that his counsel failed to provide meaningful representation.

#### D.     Additional Claims Raised in Joseph's Memorandum of Law in Support of His Petition

Joseph urges in his counseled memorandum of law supporting the Petition that the Court consider "some additional circumstances that combined to undermine the overall fairness of [Joseph's] trial," Dkt. 34 at 37, including that Joseph's identity as the shooter was not proven by legally sufficient evidence, *see id.*, and that the trial court failed to comply with state law when responding to the jury's request for clarification between intentional and depraved indifference murder, *see id.* at 38-39.  But framing these claims as "additional circumstances" to consider does not change the fact that Joseph never raised either of these claims before the Appellate Division or the New York Court of Appeals.  Joseph's failure to "fairly present" these claims "to the highest state court capable of reviewing [them]," *Conway*, 763 F.3d at 133, necessitates the conclusion that the claims are unexhausted and barred from federal habeas review, *see* 28 U.S.C. § 2254(b)(1)(A).[5]

Even assuming that both claims were properly exhausted, included in the Petition, and not subject to any state procedural bars, habeas relief would still be

---

[5]     In his June 2021 *coram nobis* application to the Appellate Division, Joseph asserted that his appellate counsel was ineffective for (1) failing to challenge the trial court's handling of the jury's note requesting clarification on the difference between intentional and depraved indifference murder, and (2) failing to raise a claim for ineffective assistance of trial counsel for not objecting to the trial court's response to the note.  *See* Dkt. 39-22 at 9.  The Appellate Division denied this claim for ineffective assistance of appellate counsel on the merits, *see Joseph IV*, 152 N.Y.S.3d at 634, but that determination is not an adjudication of the merits of the underlying claim that Joseph faults appellate counsel for not raising -- *i.e.*, that the trial court improperly responded to the jury's note.  Under New York law, it is well settled that the only claim that appropriately may be exhausted in a *coram nobis* proceeding is one of

unwarranted.  First, Joseph's claim that his identity as the shooter was not proven

beyond a reasonable doubt fails on the merits.  At trial, Shawn identified Joseph as the

shooter, *see* Dkt. 39-5 at 34; Foster testified that he disarmed, shot, and beat Joseph with

the help of others, *see* Dkt. 39-9 at 18-19; and Walker and Dion provided similar

testimony of coming to the assistance of those beating Joseph after David and Carlos

had already been shot, *see* Dkt. 39-6 at 72-74; 97-98.  Defense counsel stipulated that

Joseph was taken from the club where Innis had his birthday party on the night of the

shooting to a hospital for treatment from being beaten and shot.  *See* Dkt. 39-7 at 9.

Although witnesses provided vague descriptions of the shooter, the jury, which

observed Joseph in the courtroom and received a photograph of Joseph when he was

released from the hospital two weeks after the shooting, was certainly able to determine

if the descriptions conformed to Joseph's appearance.  Thus, Joseph's claim that his

identity was the shooter was not proven beyond a reasonable doubt fails.

As to Joseph's claim that the trial court failed to comply with state law --

specifically New York Criminal Procedure Law § 310.30 -- when responding to the

jury's note, "[i]t is well established that a federal habeas court does not sit to correct a

misapplication of state law, unless such misapplication violates the Constitution, laws,

---

ineffective assistance of appellate counsel.  *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) ("In a criminal action, the writ of error coram nobis lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." (alteration in original, quotation and citation omitted)).  Thus, because Joseph's claim that the trial court improperly responded to the jury's note is not exhausted by being mentioned in the June 2021 *coram nobis* petition, it is barred from federal habeas review.  *See* 28 U.S.C. § 2254(b)(1)(A).

or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002)

(citing 28 U.S.C. § 2254); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("'We have

stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"

(citation omitted)).  Because "[a] claim premised on a violation of New York Criminal

Procedure Law Section 310.30 does not allege a violation of a federally protected right,"

*Jackson v. Eckert*, No. 19-CV-4444 (JS), 2023 WL 2477633, at *10 (E.D.N.Y. Mar. 13, 2023)

(citation omitted), Joseph's jury note claim does not provide a basis for granting federal

habeas relief.

Even if the jury note claim were considered on the merits, it would be

found to be without merit.  New York Criminal Procedure Law § 310.30 provides that

"[a]t any time during its deliberation, the jury may request the court for further

instruction . . . [and u]pon such a request, the court must direct that the jury be returned

to the courtroom and, after notice to both the people and counsel for the defendant, and

in the presence of the defendant, must give such requested information or instruction as

the court deems proper."  When the trial court received the jury note, the court "marked

[it] as a court exhibit and, before the jury [was] recalled to the courtroom, read [it] into

the record in the presence of counsel [and Joseph]."  *People v. O'Rama*, 579 N.E.2d 189,

192 (N.Y. 1991); *see also* Dkt. 39-22 at 51 ("For the record the case is called and the jury is

on the way down.  Defendant is present. . . .  I got a second note that they want me to

define and clarify intentional murder versus depraved indifference murder . . . ."); *Id.* at

28

53 (showing jury note marked as "Court's Exhibit #3," which states "Please

define/clarification Intentional Murder (2°) - vs - Depraved Indiff. Murder (2°)").  The

trial court also informed counsel that it would respond to the note by "reread[ing] the

charges." Dkt. 39-22 at 51.  Thus, "defense counsel had notice of the contents of the note

and the court's [proposed] response, and failed to object at that time, when the error[, if

any,] could have been cured." *People v. Ramirez*, 935 N.E.2d 791, 791 (N.Y. 2010).

       As to the adequacy of the trial court's response, New York law affords the

trial court some discretion in responding to a jury's request for clarification, *see People v.*

*Malloy*, 434 N.E.2d 237, 240 (N.Y. 1982) ("The trial court . . . is vested with some measure

of discretion in framing its response and is in the best position to evaluate the jury's

request in the first instance."), and "a simple reiteration of an original instruction

suffices as a meaningful response" "when the original instruction is accurate and 'where

the jury expresses no confusion regarding the original charge,'" *People v. Santi*, 818

N.E.2d 1146, 1155 (N.Y. 2004) (alterations adopted).  There is no argument here that the

original jury instruction was inaccurate, and the jury confirmed the adequacy of the

trial court's response by not requesting additional clarification and later issuing a

verdict.  *See Robinson v. Heath*, No. 12-CV-2116 (NGG), 2013 WL 5774544, at *8 (E.D.N.Y.

Oct. 24, 2013).  Thus, because the record reflects that the trial court complied with its

"meaningful notice" and "meaningful response" obligations under New York Criminal

Procedure Law § 310.30, *O'Rama*, 579 N.E.2d at 192 (citation and internal quotation marks omitted), this claim is meritless.

Accordingly, habeas relief on the additional claims must be denied.

### CONCLUSION

Joseph has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his habeas petition is denied. Additionally, I decline to issue a certificate of appealability because Joseph has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated:    New York, New York
          April 26, 2023

DENNY CHIN
United States Circuit Judge
Sitting By Designation